William P. Deni, Jr.
J. Brugh Lower
**FBT GIBBONS LLP**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500

*Attorneys for Plaintiff*
*Grünenthal GmbH*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GRÜNENTHAL GMBH,<br><br>Plaintiff,<br><br>v.<br><br>HIKMA PHARMACEUTICALS USA INC., HIKMA PHARMACEUTICALS PLC, and COLLEGIUM PHARMACEUTICAL, INC.,<br><br>Defendants. | Civil Action No. 26-999<br><br>*Document Electronically Filed* |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Grünenthal GmbH ("Grünenthal" or "Plaintiff"), by way of Complaint against Defendants Hikma Pharmaceuticals USA Inc. ("Hikma USA") and Hikma Pharmaceuticals PLC ("Hikma UK") (collectively, "Hikma") and Collegium Pharmaceutical, Inc. ("Collegium") (with Hikma, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, § 100 *et seq*., including §§ 271 and 281, and the Declaratory Judgment Act, Title 28, United States Code, including §§ 2201-2202, for infringement of United States Patent Nos. 8,536,130 (the "the '130 patent") and 11,344,512 (the "the '512" patent") (collectively "the patents-in-suit").

2.     Plaintiff seeks a declaratory judgment that Defendants have and/or will infringe at least one claim of the patents-in-suit, which are listed in the FDA *Approved Drug Products with Therapeutic Equivalence Evaluations* ("Orange Book") for Nucynta® ER (tapentadol), a pain medication that is the subject of FDA-approved New Drug Application ("NDA") No. 200533.  In preparation for launching or upon the launch of a tapentadol extended-release product under its own branding ("the Hikma Product"), Hikma has infringed and/or will infringe, either directly or indirectly, one or more claims of the patents-in-suit by using, selling, or offering for sale the Hikma Product before the expiration of the patents-in-suit.  Collegium has infringed and/or will infringe indirectly one or more claims of the patents-in-suit by contributing to and/or inducing direct infringement by Hikma before the expiration of the patents-in-suit.

## THE PARTIES

3.     Grünenthal is a corporation organized and existing under the laws of Germany, having a principal place of business in Zieglerstrasse 6, Aachen, Germany D-52078.

4.     Upon information and belief, Hikma USA is a corporation organized under the laws of Delaware, having a principal place of business at 200 Connell Drive, 4th Floor, Berkeley Heights, New Jersey 07922.  Upon information and belief, Hikma USA is in the business of making and selling generic pharmaceutical products, which it distributes in the State of New Jersey and throughout the United States.  Upon information and belief, Hikma USA is a wholly owned subsidiary of Hikma UK.

5.     Upon information and belief, Hikma USA acts at the direction and for the benefit of Hikma UK and is controlled and/or dominated by Hikma UK.

6.     Upon information and belief, Hikma UK is a corporation organized and existing under the laws of the United Kingdom with its principal place of business at 1 New Burlington

Place, London, W1S 2HR, United Kingdom.  Upon information and belief, Hikma UK is the parent company of Hikma USA, which is a wholly owned subsidiary of Hikma UK.

7.    Upon information and belief, Collegium is a corporation organized under the laws of Virginia, having a principal place of business at 100 Technology Center Drive, Suite 300, Stoughton, Massachusetts 02072.

## GRÜNENTHAL, ITS DEVELOPMENT OF TAPENTADOL, AND ITS PATENTS

8.    Grünenthal is an innovative pharmaceutical company and a global leader in pain management.  Grünenthal and its researchers developed tapentadol, a centrally-acting synthetic analgesic.

9.    Tapentadol is the active pharmaceutical ingredient in Nucynta® ER, which was approved by the FDA in August 2011.  At the time of its initial approval, Nucynta® ER was indicated for the management of moderate to severe chronic pain in adults when a continuous, around-the-clock opioid analgesic is needed for an extended period.

10.    After discovering and developing tapentadol, Grünenthal, along with its commercial partners, has continued to develop Nucynta® ER and its uses.  For example, based on clinical trial results, the FDA approved Nucynta® ER in August 2012 for the additional indication of the management of neuropathic pain associated with diabetic peripheral neuropathy ("DPN") in adults.

11.    Over the course of the development of tapentadol, Grünenthal filed patent applications directed to its inventions related to tapentadol and its uses.  These patents were listed in the Orange Book as covering Nucynta® ER.  The '130 patent and the '512 patent are currently listed for Nucynta® ER (NDA No. 200533) in the FDA's Orange Book.

12.     The '130 patent is directed to methods of treating polyneuropathic pain, including DPN, by administering tapentadol.  The '512 patent is directed to methods of treating pain with a lower incidence of somnolence by following a certain dosing regimen for administering tapentadol.

13.     Grünenthal is the sole owner of the patents-in-suit.

### GRÜNENTHAL AND ITS CORPORATE PARTNERS

14.     Grünenthal partnered with Janssen Pharmaceuticals, Inc. ("Janssen") to bring tapentadol to the United States market as Nucynta® and, relevant for this action, Nucynta® ER. *See, e.g.*, Press Release, Janssen, FDA Approves NUCYNTA® ER (tapentadol) Extended-Release Oral Tablets for the Management of Neuropathic Pain Associated with Diabetic Peripheral Neuropathy (Aug. 29, 2012), https://www.jnj.com/media-center/press-releases/fda-approves-nucynta-er-tapentadol-extended-release-oral-tablets-for-the-management-of-neuropathic-pain-associated-with-diabetic-peripheral-neuropathy; Press Release, Janssen, Janssen Pharmaceuticals, Inc. Completes Divestiture of U.S. License Rights to NUCYNTA® (tapentadol), NUCYNTA® ER (tapentadol) extended-release tablets and NUCYNTA® (tapentadol) Oral Solution to Depomed, Inc. (Feb. 23, 2017), https://www.jnj.com/media-center/press-releases/janssen-pharmaceuticals-inc-completes-divestiture-of-us-license-rights-to-nucynta-tapentadol-nucynta-er-tapentadol-extended-release-tablets-and-nucynta-tapentadol-oral-solution-to-depomed-inc.

15.     Grünenthal, Janssen, and Janssen Research & Development, LLC (along with Janssen, "OMP") entered into a license agreement dated Feb. 21, 2003, which was subsequently amended.  Exhibit 1, Assignment and Consent Agreement (Jan. 13, 2015) (includes redacted version of a License Agreement (U.S.) between Grünenthal GmbH and Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC dated Jan. 13, 2015 ("2015 License Agreement")), https://www.sec.gov/Archives/edgar/data/1005201/000110465915085800/a15-23793_1ex10d3.htm.

16.    Under the 2015 License Agreement, Grünenthal agreed to license to OMP certain patents and know-how regarding tapentadol, referred to as CG-5503 in the agreement, and pharmaceutical formulations containing tapentadol.  Exhibit 1, 2015 License Agreement, at GRT 27 (Article 2, § 2.1(a)).  Pursuant to the 2015 License Agreement, Grünenthal also granted manufacturing, commercialization, and certain other rights to OMP for the licensed products in the United States.  *Id.* at GRT 27-28 (Article 2, § 2.1(a)-(d)).

17.    Grünenthal granted to OMP "an exclusive (even as to Grünenthal), royalty-bearing, license, within the Field, under the Grünenthal Background Patents, Improvement Patents Controlled by Grünenthal and Grünenthal Know-How, to Commercialize Products within the OMP Territory," (Exhibit 1, 2015 License Agreement, at GRT 27 (Article 2, § 2.1(a))), which is defined as the United States (*id.* at GRT 23 (Article 1, § 1.45)).  Upon information and belief, the patents-in-suit are Grünenthal "Improvement Patents Controlled by Grünenthal" according to the 2015 License Agreement.

18.    Under the 2015 License Agreement, OMP had no right to sublicense other than to "Affiliates of OMP."  Exhibit 1, 2015 License Agreement, at GRT 28 (Article 2, § 2.1(f)).  In contrast, the 2015 License Agreement gave Grünenthal the right to sublicense "to Affiliates of Grünenthal or to licensees of Grünenthal."  *Id.* (Article 2, § 2.2(f)).

19.    The 2015 License Agreement included terms for royalties to be paid to Grünenthal (*see* Exhibit 1, 2015 License Agreement, at GRT 28 (Article 2, § 2.2(d), GRT 32-40 (Article 6)), which, upon information and belief, would decrease upon certain events, including competition in the OMP territory.

20.    At the time Nucynta® ER was approved by the FDA in August 2012, Janssen was the holder of NDA No. 200533.

21.     In April 2015, Janssen announced that it had completed the divestiture of its U.S. license rights to Nucynta® (tapentadol), Nucynta® ER (tapentadol) extended-release tablets, and Nucynta® (tapentadol) oral solution to Depomed, Inc. ("Depomed").  Press Release, Janssen, Janssen Pharmaceuticals, Inc. Completes Divestiture of U.S. License Rights to NUCYNTA® (tapentadol), NUCYNTA® ER (tapentadol) extended-release tablets and NUCYNTA® (tapentadol) Oral Solution to Depomed, Inc. (Feb. 23, 2017) https://www.jnj.com/media-center/press-releases/janssen-pharmaceuticals-inc-completes-divestiture-of-us-license-rights-to-nucynta-tapentadol-nucynta-er-tapentadol-extended-release-tablets-and-nucynta-tapentadol-oral-solution-to-depomed-inc.  As part of that transaction, Janssen announced that its United States commercialization rights from Grünenthal were assigned to Depomed.  *Id.*

22.     On the same day that Grünenthal and OMP executed the 2015 License Agreement, they also entered into an Assignment and Consent Agreement dated Jan. 13, 2015, wherein Grünenthal consented to the assignment of the 2015 License Agreement to Depomed, Inc., OMP's successor-in-interest.  Exhibit 1, Assignment and Consent Agreement, at GRT 1-2; *see also* Exhibit 2, Press Release, Grünenthal Group, Grünenthal GmbH granted its consent to the transfer of the license rights for Nucynta® (tapentadol) in the U.S. from Janssen Pharmaceuticals, Inc., to Depomed, Inc.," (Jan. 15, 2015).  Thereafter, Depomed became the holder of NDA 200533 for Nucynta® ER (tapentadol).

23.     Upon information and belief, Depomed changed its corporate name to Assertio Therapeutics, Inc. ("Assertio").

24.     Thereafter, Collegium Pharmaceutical, Inc. (defined above as "Collegium") acquired the United States rights to the Nucynta franchise from Assertio.  Exhibit 3, Press Release, Collegium, Collegium to Acquire U.S. Rights to Nucynta Franchise (Feb. 6, 2020),

https://ir.collegiumpharma.com/news-releases/news-release-details/collegium-acquire-us-rights-nucynta-franchise.  As part of the transaction, "Collegium will assume the U.S. license for the Nucynta Franchise."  *Id.*  Upon information and belief, Collegium assumed Assertio's (formerly Depomed's) rights and obligations under the 2015 License Agreement.  Upon information and belief, like Assertio (formerly Depomed), Collegium does not have the right to sublicense its license grant from Grünenthal other than to its affiliates as that term is defined in the 2015 License Agreement.

25.    Collegium is the current NDA holder of NDA No. 200533 for Nucynta® ER (tapentadol).

## AUTHORIZED GENERIC PRODUCTS

26.    The Nucynta® ER product is a branded product.  It is the subject of an NDA and was approved as a new drug by the FDA under Section 505(c) of the Federal Food, Drug, and Cosmetic Act.  Upon information and belief, to date Nucynta® ER is the only extended-release tapentadol product available on the market in the United States.

27.    Upon information and belief, a generic drug is manufactured to be a copy of a branded drug.  Upon information and belief, a generic drug is approved under Section 505(j) of the Federal Food, Drug, and Cosmetic Act after the filing of an Abbreviated New Drug Application ("ANDA").  Upon information and belief, an ANDA filer may rely upon the branded drug's clinical trials and data without going through the time and expense of conducting its own trials to demonstrate the generic drug's safety and efficacy.  In other words, upon information and belief, an ANDA filer can piggyback on the work of an NDA filer.

28.    Upon information and belief, in exchange for this abbreviated application process, an ANDA filer must make certain certifications pursuant to 21 U.S.C. § 505(j)(2)(A)(vii) regarding any patents that may be listed in the Orange Book for the innovative, branded drug,

which the ANDA seeks to copy.  One of those certifications is a "Paragraph IV" certification

pursuant to 21 U.S.C. § 505(j)(2)(A)(vii)(IV), which asserts that the listed patent(s) are invalid or

will not be infringed by the manufacture, use, or sale of the drug for which the ANDA is submitted.

Upon information and belief, if an ANDA filer includes a Paragraph IV certification in its ANDA,

the ANDA filer must provide notice to, *inter alia*, the patent owner regarding the Paragraph IV

certification.  The filing of an ANDA with a Paragraph IV certification is an act of infringement

under 35 U.S.C. § 271(e)(2)(A).  Accordingly, upon information and belief, a patentee who

receives notice of a Paragraph IV certification can sue for patent infringement before a generic

drug enters the market.  This action does not involve the filing of an ANDA or infringement under

35 U.S.C. § 271(e)(2)(A).

29.    An authorized generic product is another mechanism for a generic drug to enter the

market in the United States.  Upon information and belief, an authorized generic drug is an FDA

approved brand name drug that is marketed without the brand name of its label.  *See* 21 C.F.R.

§ 314.3.  Because an authorized generic drug is the exact same drug product as the branded product,

upon information and belief, it is approved under Section 505(c) of the Federal Food, Drug, and

Cosmetic Act.  Upon information and belief, an authorized generic drug is marketed either by the

NDA holder without the brand name or by a third party with the NDA holder's permission, again

without the brand name.  Upon information and belief, the price of an authorized generic product

is lower than the branded product.

30.    Upon information and belief, because an authorized generic drug is marketed with

the permission of the NDA holder, the third party marketing the authorized generic is not required

to provide any certifications pursuant to 21 U.S.C. § 505(j)(2)(A)(vii) and/or notice to the patentee

regarding any Paragraph VI certification for patents listed in the Orange Book for the branded

product. This action arises from Collegium's partnership with Hikma USA for an authorized generic of Nucynta® ER, i.e., the Hikma Product.

## COLLEGIUM AND ITS PARTNERSHIP WITH HIKMA USA

31.    On Apr. 26, 2024, Collegium and Hikma Pharmaceuticals USA Inc., i.e., Hikma USA, entered into an Authorized Generic Agreement ("Hikma AG Agreement") related, in part, to Nucynta® ER. Exhibit 4, Authorized Generic Agreement (Apr. 26, 2024), https://www.sec.gov/Archives/edgar/data/1267565/000155837024011586/coll-20240630xex10d1.htm. Grünenthal is not a party to that agreement.

32.    The Hikma AG Agreement defines "Authorized Generic" to include, *inter alia*, "any generic equivalent Tapentadol Hydrochloride tablet that . . . is authorized by Collegium to be Marketed in the Territory under NDA #200533." Exhibit 4 at 2 (Definitions, "Authorized Generic").

33.    Under the Hikma AG Agreement, Collegium appointed Hikma USA as the distributor of the Hikma Product in the Territory, which includes the United States, as of the applicable "Launch Date." Exhibit 4 at 6 (Article 1, § 1.1). Collegium also purported to grant to Hikma USA "the exclusive (even as to Collegium) right to Market the Products in the Territory." *Id.* Collegium also averred that "it has sufficient rights to grant the rights and licenses granted herein." *Id.* at 13 (Article 4, § 4.2).

34.    On Apr. 29, 2024, Collegium announced this authorized generic agreement with Hikma Pharmaceuticals USA Inc., i.e., Hikma USA, for Nucynta® and Nucynta® ER. Exhibit 5, Press Release, Collegium, Collegium Announces Authorized Generic Agreement with Hikma Pharmaceuticals USA Inc. for Nucynta® and Nucynta® ER (Apr. 29, 2024), https://ir.collegiumpharma.com/news-releases/news-release-details/collegium-announces-authorized-generic-agreement-hikma. Collegium announced that "Collegium will manufacture

and supply Hikma with all authorized generic product for sale on an exclusive basis during the term of the agreement." *Id.* Collegium also announced that "Hikma will sell the authorized generic forms of the Nucynta Franchise in the United States, commencing 30 days prior to the anticipated loss of exclusivity for each product, or earlier under certain circumstances." *Id.* Collegium did not announce either the date of loss of exclusivity or the date on which Hikma would sell the authorized generic Nucynta® ER product, i.e., the Hikma Product.

35.    On Jan. 8, 2026, Collegium provided a 2026 financial guidance and business update. Exhibit 6, Press Release, Collegium, Collegium Provides 2026 Financial Guidance and Business Update (Jan. 8, 2026), https://ir.collegiumpharma.com/news-releases/news-release-details/collegium-provides-2026-financial-guidance-and-business-update.    In that update, Collegium announced that pursuant to the Hikma AG Agreement, "Hikma will have the exclusive right to sell the Collegium-supplied authorized generic versions of Nucynta® and Nucynta® ER in the United States." *Id.* Collegium further announced that "Hikma is expected to launch authorized generic versions of Nucynta ER in Q1 2026." *Id.* Upon information and belief, Grünenthal was provided no notice of Defendants' intention to launch the Hikma Product in early 2026. Grünenthal became aware of Defendants' intention to launch the Hikma Product in early 2026 through Collegium's Jan. 8, 2026 press release.

36.    Upon information and belief, absent Collegium's permission, Hikma would not be able to bring the Hikma Product to the United States market.

37.    Upon information and belief, Collegium and Hikma have collaborated and will continue to collaborate pursuant to the Hikma AG Agreement to bring an authorized generic version of Nucynta® ER to the United States market in January, February, or March 2026. Upon

information and belief, this imminent launch contravenes Grünenthal's rights under the patents-in-suit and is unauthorized by Grünenthal.

## HIKMA'S IMMINENT LAUNCH OF THE HIKMA PRODUCT

38.    Upon information and belief, Hikma is taking steps to launch the Hikma Product in the United States in the first quarter of 2026.

39.    Pursuant to the Hikma AG Agreement and upon information and belief, Hikma has communicated, is communicating, or will communicate with healthcare providers, payors, buyers, pharmacies, wholesalers, and others regarding the imminent availability of the Hikma Product. Exhibit 4 at 6-7 (Article 1, § 1.2).

40.    Upon information and belief, Hikma has ordered, is ordering, and/or will order from Collegium the Hikma Product and has stockpiled, is stockpiling, and/or will stockpile the Hikma Product for imminent launch in the United States in the first quarter of 2026.  Exhibit 4 at 6-7 (Article 1, § 1.2).

41.    Upon information and belief, Hikma has listed or will list the price of the Hikma Product, with compendia, in the first quarter of 2026.  Exhibit 4 at 6-7 (Article 1, § 1.2).

42.    Upon information and belief, Hikma has shipped and/or will ship the Hikma Product under quarantine prior to its imminent launch in the first quarter of 2026.  Exhibit 4 at 6-7 (Article 1, § 1.2).

43.    Upon information and belief, Hikma's labeling for the Hikma Product will be identical to the current label for Nucynta® ER in all material respects except for the tradename and corporate details.  Upon information and belief, the Hikma Product will be indicated for the management of moderate to severe chronic pain in adults and neuropathic pain associated with DPN in adults.  Upon information and belief, the Hikma Product will be available in 50 mg, 100 mg, 150 mg, 200 mg, and 250 mg extended-release tablets of tapentadol.

44.     Upon information and belief, Hikma is not required to provide any notice to Grünenthal pursuant to any statute or FDA regulation that it is planning to or will launch the Hikma Product along with its accompanying labeling in the United States before the expiration of the patents-in-suit.

45.     Upon information and belief, because Nucynta® ER is an FDA-approved product, Hikma can launch the Hikma Product at any time upon authorization from the NDA holder, i.e., Collegium.

## JURISDICTION AND VENUE

46.     This is a civil action for patent infringement and declaratory judgment arising under the patent laws of the United States, 35 U.S.C. § 100, *et seq*., including 35 U.S.C. § 271.

47.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

48.     This Court has personal jurisdiction over Hikma USA because, *inter alia*, Hikma USA maintains a principal place of business in New Jersey, is doing business in New Jersey, and has thus purposefully availed itself of the privileges of conducting business in New Jersey.  This Court also has jurisdiction over Hikma USA because it has committed, or will commit immediately and imminently, an act of patent infringement under 35 U.S.C. § 271 and intends a future course of conduct that includes acts of patent infringement in New Jersey.  These acts will lead to foreseeable harm and injury to Grünenthal in New Jersey.  For example, upon information and belief, Hikma USA will, directly or through its affiliates, make, use, import, sell, and/or offer for sale the Hikma Product in the United States, including in New Jersey, before the expiration of the patents-in-suit.

49.     This Court has personal jurisdiction over Hikma UK because, *inter alia*, it works together with Hikma USA, in New Jersey, and has thus purposefully availed itself of the privileges

of conducting business in New Jersey.  This Court also has jurisdiction over Hikma UK because it has committed, or will commit immediately and imminently, an act of patent infringement under 35 U.S.C. § 271 and intends a future course of conduct that includes acts of patent infringement in New Jersey.  These acts will lead to foreseeable harm and injury to Grünenthal in New Jersey.  For example, upon information and belief, Hikma UK, along with its subsidiary Hikma USA, will, directly or through its affiliates, make, use, import, sell, and/or offer for sale the Hikma Product in the United States, including in New Jersey, before the expiration of the patents-in-suit.

50.    Upon information and belief, Hikma UK and Hikma USA hold themselves out as a unitary entity and operate as a single integrated business.  Upon information and belief, Hikma UK and Hikma USA work in concert with respect to regulatory approval, manufacturing, marketing, selling and distributing generic pharmaceutical products throughout the United States, including in the State of New Jersey.

51.    This Court has personal jurisdiction over Collegium because, *inter alia*, Collegium has purposefully availed itself of the rights and benefits of conducting business in New Jersey by engaging in systematic and continuous contacts in New Jersey.  Upon information and belief, Collegium's marketing and sales activities in New Jersey include, but are not limited to, the substantial, continuous, and systematic distribution, marketing, and/or sales of Nucynta® ER to residents of New Jersey.  Upon information and belief, Collegium intends to supply Hikma USA, which has a principal place of business in New Jersey, and its affiliates, with the Hikma Product, to be marketed and/or sold in the United States, including to residents of New Jersey, prior to the expiration date of the patents-in-suit.  Accordingly, Collegium should have reasonably anticipated that its actions would cause injury in New Jersey and that it would be subject to suit in New Jersey to redress that injury.

52.    Venue is proper in this District with respect to all Defendants pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b).

## THE PATENTS-IN-SUIT

53.    The '130 patent, entitled "USE OF 1 PHENYL-3-DIMETHYLAMINO-PROPANE COMPOUNDS FOR TREATING NEUROPATHIC PAIN," was duly issued on Sept. 17, 2013.  A copy of the '130 patent is attached hereto as Exhibit 7.

54.    Grünenthal is the owner and assignee of all right, title, and interest in the '130 patent, including the right to sue and to recover for infringement thereof.

55.    The '130 patent is listed in the Orange Book as covering Nucynta® ER, which is the subject of approved NDA No. 200533.

56.    The '130 patent expires on Mar. 22, 2029, including additional term as a result of a grant of pediatric exclusivity.

57.    Upon information and belief, Collegium has no right to sublicense the '130 patent to Hikma.

58.    Upon information and belief, Hikma is not licensed by Grünenthal under the '130 patent for any purpose.

59.    The '512 patent, entitled "TITRATION OF TAPENTADOL," was duly issued on May 31, 2022.  A copy of the '512 patent is attached hereto as Exhibit 8.

60.    Grünenthal is the owner and assignee of all right, title, and interest in the '512 patent, including the right to sue and to recover for infringement thereof.

61.    The '512 patent is listed in the Orange Book as covering Nucynta® ER, which is the subject of approved NDA No. 200533.

62.    The '512 patent expires on Oct. 21, 2028, including additional term as a result of a grant of pediatric exclusivity.

63.    Upon information and belief, Collegium has no rights to sublicense the '512 patent to Hikma.

64.    Upon information and belief, Hikma is not licensed by Grünenthal under the '512 patent for any purpose.

## COUNT I

### DECLARATORY JUDGMENT OF INFRINGEMENT
### OF THE '130 PATENT BY HIKMA

65.    Grünenthal realleges each of the preceding paragraphs 1-64 as if fully set forth herein.

66.    Upon information and belief, Hikma had and has knowledge of the '130 patent.

67.    Upon information and belief, Hikma has already engaged in, is engaging in, and/or will immediately and imminently engage in, the use, offer for sale, selling, marketing, distribution, and/or importation of the Hikma Product.

68.    Upon information and belief, Hikma will infringe one or more claims of the '130 patent under § 271(a), either literally or under the doctrine of equivalents, by using, offering to sell, selling and/or importing the Hikma Product with its accompanying labeling, and/or by actively inducing infringement by others under § 271(b), and/or contributing to infringement under § 271(c), unless this Court enters a declaratory judgment of infringement and enjoins Hikma.

69.    Upon information and belief, the use of the Hikma Product in accordance with and as directed by Hikma's accompanying labeling for the Hikma Product will infringe one or more claims of the '130 patent, including at least claim 1.

70.    Upon information and belief, Hikma plans and intends to, and will, actively induce infringement of one or more claims of the '130 patent when it launches the Hikma Product with its accompanying labeling in the first quarter of 2026.

71.    Upon information and belief, Hikma knows, should know, and intends that physicians will prescribe and patients will take the Hikma Product, and therefore will infringe one or more claims of the '130 patent.

72.    Upon information and belief, Hikma knows or should know that it will induce direct infringement of one or more claims of the '130 patent, either literally or under the doctrine of equivalents, by marketing the Hikma Product with its accompanying labeling.

73.    Upon information and belief, Hikma is aware and/or has knowledge that the labeling accompanying the Hikma Product will recommend, suggest, encourage, and/or instruct others how to engage in an infringing use because healthcare professionals and/or patients will use the Hikma Product according to the instructions in the accompanying labeling in a way that directly infringes one or more claims of the '130 patent.

74.    Upon information and belief, Hikma knows that the Hikma Product and its accompanying labeling are especially made or adapted for use in infringing one or more claims of the '130 patent and that the Hikma Product and its proposed labeling are not suitable for substantial non-infringing use.  Upon information and belief, Hikma plans and intends to, and will, contribute to infringement of one or more claims of the '130 patent upon launch of the Hikma Product.

75.    The foregoing actions by Hikma constitute and/or will constitute infringement of the '130 patent, active inducement of infringement of the '130 patent, and/or contribution to the infringement by others of the '130 patent.

76.    Upon information and belief, Hikma has acted with full knowledge of the '130 patent.  Upon information and belief, Hikma is not licensed by Grünenthal under the '130 patent, and any purported sublicense from Collegium is not valid.  Upon information and belief, Hikma is therefore without a reasonable basis for believing that it would not be liable for infringing

the '130 patent, actively inducing infringement of the '130 patent, and/or contributing to the infringement by others of the '130 patent.

77.    Defendants' publicized intention to launch the Hikma Product in the United States immediately and imminently has created an actual and substantial controversy between Grünenthal and Defendants concerning the threatened infringement of the patents-in-suit.

78.    Upon information and belief, Hikma has taken concrete steps with the intent to conduct infringing activity.  Accordingly, an actual and justiciable controversy exists between Grünenthal and Hikma regarding infringement of the '130 patent.

79.    Grünenthal should be granted a declaratory judgment that the making, use, sale, offer for sale, and importation into the United States of the Hikma Product with Hikma's accompanying labeling would infringe, actively induce the infringement of, and/or contribute to the infringement by others of the '130 patent.

80.    Hikma should be enjoined from infringing the '130 patent, actively inducing infringement of the '130 patent, and/or contributing to the infringement by others of the '130 patent; otherwise, Plaintiffs will suffer irreparable injury.

### COUNT II

### DECLARATORY JUDGMENT OF INFRINGEMENT
### OF THE '512 PATENT BY HIKMA

81.    Grünenthal realleges each of the preceding paragraphs 1-80 as if fully set forth herein.

82.    Upon information and belief, Hikma had and has knowledge of the '512 patent.

83.    Upon information and belief, Hikma has already engaged in, is engaging in, and/or will immediately and imminently engage in the use, offer for sale, selling, marketing, distribution, and/or importation of the Hikma Product.

84.     Upon information and belief, Hikma will infringe one or more claims of the '512 patent under § 271(a), either literally or under the doctrine of equivalents, by using, offering to sell, selling and/or importing the Hikma Product with its accompanying labeling, and/or by actively inducing infringement by others under § 271(b), and/or contributing to infringement under § 271(c), unless this Court enters a declaratory judgment of infringement and enjoins Hikma.

85.     Upon information and belief, the use of the Hikma Product in accordance with and as directed by Hikma's accompanying labeling for the Hikma Product will infringe one or more claims of the '512 patent, including at least claim 1.

86.     Upon information and belief, Hikma plans and intends to, and will, actively induce infringement of one or more claims of the '512 patent when it launches the Hikma Product with its accompanying labeling in the first quarter of 2026.

87.     Upon information and belief, Hikma knows, should know, and intends that physicians will prescribe and patients will take the Hikma Product, and therefore will infringe one or more claims of the '512 patent.

88.     Upon information and belief, Hikma knows or should know that it will induce direct infringement of one or more claims of the '512 patent, either literally or under the doctrine of equivalents, by marketing the Hikma Product with its accompanying labeling.

89.     Upon information and belief, Hikma is aware and/or has knowledge that the labeling accompanying the Hikma Product will recommend, suggest, encourage, and/or instruct others how to engage in an infringing use because healthcare professionals and/or patients will use the Hikma Product according to the instructions in the accompanying labeling in a way that directly infringes one or more claims of the '512 patent.

90.    Upon information and belief, Hikma knows that the Hikma Product and its accompanying labeling are especially made or adapted for use in infringing one or more claims of the '512 patent and that the Hikma Product and its proposed labeling are not suitable for substantial non-infringing use.  Upon information and belief, Hikma plans and intends to, and will, contribute to infringement of one or more claims of the '512 patent upon launch of the Hikma Product.

91.    The foregoing actions by Hikma constitute and/or will constitute infringement of the '512 patent, active inducement of infringement of the '512 patent, and/or contribution to the infringement by others of the '512 patent.

92.    Upon information and belief, Hikma has acted with full knowledge of the '512 patent.  Upon information and belief, Hikma is not licensed by Grünenthal under the '512 patent, and any purported sublicense from Collegium is not valid.  Upon information and belief, Hikma is therefore without a reasonable basis for believing that it would not be liable for infringing the '512 patent, actively inducing infringement of the '512 patent, and/or contributing to the infringement by others of the '512 patent.

93.    Defendants' publicized intention to launch the Hikma Product in the United States immediately and imminently has created an actual and substantial controversy between Grünenthal and Defendants concerning the threatened infringement of the patents-in-suit.

94.    Upon information and belief, Hikma has taken concrete steps with the intent to conduct infringing activity.  Accordingly, an actual and justiciable controversy exists between Grünenthal and Hikma regarding infringement of the '512 patent.

95.    Grünenthal should be granted a declaratory judgment that the making, use, sale, offer for sale, and importation into the United States of the Hikma Product with Hikma's

accompanying labeling would infringe, actively induce the infringement of, and/or contribute to the infringement by others of the '512 patent.

96.    Hikma should be enjoined from infringing the '512 patent, actively inducing infringement of the '512 patent, and/or contributing to the infringement by others of the '512 patent; otherwise, Plaintiffs will suffer irreparable injury.

## COUNT III

### DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '130 PATENT BY COLLEGIUM

97.    Grünenthal realleges each of the preceding paragraphs 1-96 as if fully set forth herein.

98.    Collegium had and has knowledge of the '130 patent.

99.    Upon information and belief, Collegium has knowingly induced Hikma to imminently and immediately engage in the use, offer for sale, selling, marketing, distribution, and/or importation of the Hikma Product by appointing Hikma as an authorized generic under the Collegium NDA.  Upon information and belief, Collegium has knowingly and actively contributed to Hikma's imminent and immediate use, offer for sale, selling, marketing, distribution, and/or importation of the Hikma Product.

100.    Upon information and belief, Collegium has knowingly induced Hikma to imminently and immediately infringe one or more claims of the '130 patent under § 271(a), either literally or under the doctrine of equivalents, by using, offering to sell, selling and/or importing the Hikma Product with its accompanying labeling, and/or by actively inducing infringement by others under § 271(b), and/or contributing to infringement under § 271(c), unless this Court enters a declaratory judgment of infringement and enjoins Hikma.

101.    Upon information and belief, Collegium knows that the use of the Hikma Product in accordance with and as directed by Hikma's accompanying labeling for the Hikma Product will infringe one or more claims of the '130 patent, including at least claim 1.

102.    Upon information and belief, Collegium knowingly assisted in and induced Hikma to actively induce infringement of one or more claims of the '130 patent when it launches the Hikma Product with its accompanying labeling in the first quarter of 2026.

103.    Upon information and belief, Collegium knows, should know, and intends that physicians will prescribe and patients will take the Hikma Product, and therefore will infringe one or more claims of the '130 patent.

104.    Upon information and belief, Collegium knowingly assisted and induced Hikma to induce direct infringement of one or more claims of the '130 patent, either literally or under the doctrine of equivalents, by marketing the Hikma Product with its accompanying labeling.

105.    Upon information and belief, Collegium is aware and/or has knowledge that the labeling accompanying the Hikma Product will recommend, suggest, encourage, and/or instruct others how to engage in an infringing use because healthcare professionals and/or patients will use the Hikma Product according to the instructions in the accompanying labeling in a way that directly infringes one or more claims of the '130 patent.

106.    Upon information and belief, Collegium knows that the Hikma Product and its accompanying labeling are especially made or adapted for use in infringing one or more claims of the '130 patent and that the Hikma Product and its proposed labeling are not suitable for substantial non-infringing use.  Upon information and belief, Collegium knowingly assisted and induced Hikma to contribute to infringement of one or more claims of the '130 patent upon launch of the Hikma Product.

107.   The foregoing actions by Hikma, as induced by Collegium, constitute and/or will constitute infringement of the '130 patent, active inducement of infringement of the '130 patent, and/or contribution to the infringement by others of the '130 patent.

108.   Upon information and belief, Collegium has acted with full knowledge of the '130 patent.  Upon information and belief, Collegium is not authorized by Grünenthal to sublicense Hikma under the '130 patent.  Upon information and belief, Collegium is therefore without a reasonable basis for believing that it would not be liable for actively inducing and/or contributing to the infringement of the '130 patent.

109.   Defendants' publicized intention to launch the Hikma Product in the United States immediately and imminently has created an actual and substantial controversy between Grünenthal and Defendants concerning the threatened infringement of the patents-in-suit.

110.   Upon information and belief, Collegium has taken concrete steps with the intent to actively induce infringing activity by Hikma.  Accordingly, an actual and justiciable controversy exists between Grünenthal and Collegium regarding infringement of the '130 patent.

111.   Grünenthal should be granted a declaratory judgment that Collegium's activities with respect to Hikma and the Hikma Product with its accompanying label actively induces and/or contributes to the infringement by others of one or more claims of the '130 patent.

112.   Collegium should be enjoined from actively inducing infringement of the '130 patent; otherwise, Plaintiffs will suffer irreparable injury.

## COUNT IV

### DECLARATORY JUDGMENT OF INFRINGEMENT
### OF THE '512 PATENT COLLEGIUM

113.   Grünenthal realleges each of the preceding paragraphs 1-112 as if fully set forth herein.

114.    Collegium had and has knowledge of the '512 patent.

115.    Upon information and belief, Collegium has knowingly induced Hikma to imminently and immediately engage in the use, offer for sale, selling, marketing, distribution, and/or importation of the Hikma Product.  Upon information and belief, Collegium has knowingly and actively contributed to Hikma's imminent and immediate use, offer for sale, selling, marketing, distribution, and/or importation of the Hikma Product.

116.    Upon information and belief, Collegium has knowingly induced Hikma to imminently and immediately infringe one or more claims of the '512 patent under § 271(a), either literally or under the doctrine of equivalents, by using, offering to sell, selling and/or importing the Hikma Product with its accompanying labeling, and/or by actively inducing infringement by others under § 271(b), and/or contributing to infringement under § 271(c), unless this Court enters a declaratory judgment of infringement and enjoins Hikma.

117.    Upon information and belief, Collegium knows that the use of the Hikma Product in accordance with and as directed by Hikma's accompanying labeling for the Hikma Product will infringe one or more claims of the '512 patent, including at least claim 1.

118.    Upon information and belief, Collegium knowingly assisted in and induced Hikma to actively induce infringement of one or more claims of the '512 patent when it launches the Hikma Product with its accompanying labeling in the first quarter of 2026.

119.    Upon information and belief, Collegium knows, should know, and intends that physicians will prescribe and patients will take the Hikma Product, and therefore will infringe one or more claims of the '512 patent.

120.    Upon information and belief, Collegium knowingly assisted and induced Hikma to induce direct infringement of one or more claims of the '512 patent, either literally or under the doctrine of equivalents, by marketing the Hikma Product with its accompanying labeling.

121.    Upon information and belief, Collegium is aware and/or has knowledge that the labeling accompanying the Hikma Product will recommend, suggest, encourage, and/or instruct others how to engage in an infringing use because healthcare professionals and/or patients will use the Hikma Product according to the instructions in the accompanying labeling in a way that directly infringes one or more claims of the '512 patent.

122.    Upon information and belief, Collegium knows that the Hikma Product and its accompanying labeling are especially made or adapted for use in infringing one or more claims of the '512 patent and that the Hikma Product and its proposed labeling are not suitable for substantial non-infringing use.   Upon information and belief, Collegium knowingly assisted and induced Hikma to contribute to infringement of one or more claims of the '512 patent upon launch of the Hikma Product.

123.    The foregoing actions by Hikma, as induced by Collegium, constitute and/or will constitute infringement of the '512 patent, active inducement of infringement of the '512 patent, and/or contribution to the infringement by others of the '512 patent.

124.    Upon information and belief, Collegium has acted with full knowledge of the '512 patent.   Upon information and belief, Collegium is not authorized by Grünenthal to sublicense Hikma under the '512 patent.   Upon information and belief, Collegium is therefore without a reasonable basis for believing that it would not be liable for actively inducing and/or contributing to the infringement of the '512 patent.

125.    Defendants' publicized intention to launch the Hikma Product in the United States immediately and imminently has created an actual and substantial controversy between Grünenthal and Defendants concerning the threatened infringement of the patents-in-suit.

126.    Upon information and belief, Collegium has taken concrete steps with the intent to actively induce infringing activity by Hikma.  Accordingly, an actual and justiciable controversy exists between Grünenthal and Collegium regarding infringement of the '512 patent.

127.    Grünenthal should be granted a declaratory judgment that Collegium's activities with respect to Hikma and the Hikma Product with its accompanying label actively induces and/or contributes to the infringement by others of one or more claims of the '512 patent.

128.    Collegium should be enjoined from actively inducing infringement of the '512 patent; otherwise, Plaintiffs will suffer irreparable injury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

1.    For a declaratory judgment in favor of Plaintiff that, upon marketing, distribution, and/or selling of the Hikma Product in the United States, Hikma will be directly infringing, contributorily infringing, and/or inducing infringement of the '130 and '512 patents;

2.    For a declaratory judgment in favor of Plaintiff that, upon marketing, distribution, and/or sale of the Hikma Product in the United States, Collegium, by manufacturing and/or supplying the Hikma Product to Hikma, will be contributorily infringing and/or inducing infringement of the '130 and '512 patents;

3.    For an injunction pursuant to 35 U.S.C. § 283 prohibiting Hikma from marketing, distributing, and/or selling the Hikma Product;

4.    For an injunction pursuant to 35 U.S.C. § 283 prohibiting Collegium from manufacturing and/or supplying the Hikma Product to Hikma;

5.      For a determination that Defendants' infringement is willful, and an award of treble the amount of damages and losses sustained by Plaintiff as a result of Defendants' infringement, under 35 U.S.C. § 284;

6.      For a determination that this is an exceptional case within the meaning of 35 U.S.C. § 285, and an award to Plaintiffs of their reasonable attorneys' fees; and

7.      For such other and further relief in law or in equity to which Plaintiff may be justly entitled.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury of any and all issues triable of right before a jury.


Dated: February 2, 2026
        Newark, New Jersey

s/ William P. Deni, Jr.
William P. Deni, Jr.
J. Brugh Lower
**FBT GIBBONS LLP**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500
wdeni@fbtgibbons.com
jlower@fbtgibbons.com

Of Counsel:

Anthony C. Tridico (*pro hac vice* to be submitted)
Erin M. Sommers (*pro hac vice* to be submitted)
Meredith H. Boerschlein (*pro hac vice* to be submitted)
Deena Kablaoui Lanier (*pro hac vice* to be submitted)
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP**
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

*Attorneys for Plaintiff*
*Grünenthal GmbH*